NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180001-U

NO. 4-18-0001

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 26, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| DERRICK D. JENKINS, | ) | No. 12CF331 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott D. Drazewski, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, holding defendant failed to establish plain error;
specifically, defendant did not show a clear or obvious error occurred.

¶ 2    In July 2017, the trial court revoked defendant's probation after finding the State

proved, by a preponderance of the evidence, defendant violated the terms and conditions of his

probation by committing another criminal offense while on probation. Specifically, the court

found that on February 11, 2017, defendant committed the offense of violation of an order of

protection as charged in McLean County case No. 17-CF-175 (case No. 17-CF-175). The court

ordered a presentence investigation (PSI) and set the matter for sentencing in September 2017.

The court eventually sentenced defendant to two years' incarceration in the Illinois Department

of Corrections (DOC) followed by one year mandatory supervised release (MSR).

¶ 3        In October 2017, defendant filed a motion to reconsider his sentence, arguing the imposed sentence was excessive. Defendant requested the trial court reconsider the probation revocation and the sentence imposed. The court denied the motion.

¶ 4        On appeal, defendant argues the trial court erred by admitting and considering other-crimes evidence during the probation revocation hearing—which occurred simultaneously with defendant's criminal jury trial in case No. 17-CF-175. Acknowledging he did not object to the other-crimes evidence at the hearing or in his posttrial motion, defendant seeks to invoke the plain error doctrine as a means for appellate review of this forfeited issue. He urges for reversal of the trial court's order, alleging the evidence presented at the probation hearing was closely balanced and the trial court's obvious error in admitting and considering inadmissible other-crimes evidence tipped the scales of justice against him. We disagree and affirm the trial court's judgment.

¶ 5                                    I. BACKGROUND

¶ 6        In August 2012, defendant pleaded guilty to resisting a peace officer with injury, a Class 4 offense (720 ILCS 5/31-1(a-7) (West 2012)). The trial court sentenced him to 120 days' incarceration in DOC and 30 months' probation; and, over the years, it twice revoked defendant's probation. In February 2017, the State filed a "Sixth Petition for Revocation of Probation," alleging defendant violated the terms and conditions of his probation by violating a criminal statute in any jurisdiction. The State's petition specifically alleged: "On February 11, 2017[,] the Defendant committed the offense(s) of Home Invasion/Cause Injury, Domestic Battery/Harm/Violate O/P and Vio Order/Notice/Prior Vio O/P, as alleged in McLean County case 17-CF-175 and incorporated here in as exhibit(s) A – C." The State's petition proceeded, without a procedural objection by defendant, concurrently with the criminal case.

¶ 7          In May 2017, pursuant to section 115-7.4 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.4 (West 2016)) and Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011), the State moved to admit evidence defendant committed another crime of domestic violence, namely defendant violated an order of protection on February 3, 2017. Under the statute, this evidence would be admissible in the criminal prosecution of his domestic violence case (case No. 17-CF-175). In arguing for the motion, the State informed the trial court it would present evidence of the February 3 violation through testimony from the victim and the responding police officers. Defendant, then represented by counsel, opposed the motion, arguing the prejudice from evidence that he violated the protection order on February 3, 2017, would "far outweigh[ ]" any probative value the evidence provided. Finding the "requirements of the statute [(section 115-7.4 of the Code)] are all clearly met," the court explained it was "required to engage in a balancing test[,] *** balancing the prejudicial effect versus the probative value of the evidence that is sought to be introduced." Ultimately, the court granted the State's motion over defendant's objection, "allow[ing] the admission of the other crimes evidence regarding the February 3rd incident in the trial of the February 11th incident under 115-7.4, which means it is admitted for all purposes, including propensity, knowledge, anything else that it is relevant to."

¶ 8          Defendant's criminal matter in case No. 17-CF-175 proceeded to jury trial in July 2017. The court reminded defendant that the State elected to litigate its petition for probation revocation (McLean County case No. 12-CF-331) in the same proceeding as the criminal prosecution. The court explained a jury would consider whether the State proved defendant guilty beyond a reasonable doubt of the criminal charges while, simultaneously, the court "would *** be considering the evidence behind the scenes *** on the petition[ ] for revocation of probation" and deciding if the State proved those allegations by a preponderance of the evidence.

The defendant acknowledged he understood the trial procedure and the different burdens the State must meet.

¶ 9 Shortly before *voir dire*, however, defendant decided to dismiss his attorney and requested leave from the trial court to proceed *pro se*. The court outlined the charges and allegations against defendant and the potential penalties. Defendant answered he understood. The court then inquired into defendant's background and admonished him on the right to counsel. Defendant persisted in his desire to represent himself, so the court allowed him to proceed *pro se*. Defendant assigns no error to that process.

¶ 10 The State's case-in-chief began with evidence of the order of protection, which required defendant to stay at least 500 feet away from Bethany Tibbets and her residence, 315 E. Locust St., Apt. 1, Bloomington, Illinois, 61701. The State offered a certified copy of the protection order, which the court admitted without objection from defendant. The court then judicially noticed certain facts from the order of protection, including: the order was entered on November 16, 2016; the order protected Bethany and her residence; defendant, who is the respondent to the petition, was served with the order on November 23, 2016; and, the order expired on February 16, 2017.

¶ 11 During the trial, the State presented evidence of the events of February 3, 2017, through testimony from the victim (Bethany) and the responding police officer. Bethany testified defendant twice knocked on her door on February 3 and asked to speak with her. The police officer testified he later located defendant 54 feet, 8 inches from the victim's apartment and arrested him for violating the protection order. The State also presented body-camera footage of the officer arresting defendant to show where the arrest occurred. Defendant did not object to the court admitting this other-crimes evidence under section 115-7.4 of the Code.

¶ 12        The State likewise presented evidence of the February 11 incident through testimony from the victim (Bethany) and the responding police officers. Bethany testified defendant entered her apartment around 2 a.m. on Saturday, February 11, 2017. She described him as angry and intoxicated. Bethany said she could not recall how defendant hit her, but she remembered him sticking his finger in her face and her nose bleeding. She testified defendant's hands contacted her nose and face four or five times. Bethany stated defendant snatched her necklace and cellphone and then left her apartment. She testified she called 911 once defendant left and police officers arrived shortly thereafter.

¶ 13        Bloomington police officer, Tyler Elston, testified he responded to the victim's 911 call at approximately 2:30 a.m. on February 11, 2017. Elston described Bethany's demeanor as "very upset." He stated she had a bloody nose and marks on her face when he saw her that night. Elston testified Bethany told him defendant caused her injuries. Elston photographed her injuries and recorded her statement. He testified paramedics arrived at the apartment to treat Bethany. Elston testified another officer arrested defendant the next day. On cross-examination, Elston reiterated Bethany appeared scared and nervous that night. He reaffirmed she required medical attention for her injuries.

¶ 14        Defendant presented an alibi defense and called Passion Diles as his sole witness. Diles testified defendant arrived at her apartment at 6 p.m. on Saturday, February 11, 2017. Diles recounted she, her sister, and defendant then left her apartment at 11 p.m. to attend a Valentine's Day party at a downtown Bloomington bar. She stated they stayed at the bar until 2 a.m. (now February 12, 2017) when she and defendant returned to her apartment alone. Diles said they arrived at her apartment at approximately 2:30 a.m. and defendant spent the night there. On cross-examination, Diles testified she and defendant attended the Valentine's Day party on a

Saturday night. She recalled defendant slept on her couch and left her apartment at 8:30 a.m. on Sunday. Diles testified she did not cooperate with police and never told them about defendant's alibi. She stated she told her version of events of February 11, 2017, and February 12, 2017, to defendant's public defender.

¶ 15        The State introduced evidence of Passion Diles' criminal history, specifically convictions for felony theft over $500 and felony aggravated battery with a deadly weapon. The State also requested the court judicially notice "that February 11, 2017, was, indeed, a Saturday from 12:01 am until midnight," which the court did over defendant's objection.

¶ 16        The jury eventually acquitted defendant on all three criminal charges. After dismissing the jury and accepting the jury verdicts, the trial court considered the State's petition to revoke probation. The court noted it "previously received the evidence in the form of testimony and exhibits, and also considering the arguments that were made by [the State] and [defendant] to the jury in 17-CF-175" and inquired if either party had additional evidence to present. The State had no further evidence but argued defendant's acquittal on the criminal charges did "not bar defendant from being found in violation of his probation, because it is a lesser burden." The State maintained it proved the probation violation by a preponderance of the evidence—*i.e.*, defendant more likely than not committed a crime on February 11, 2017. Despite the court previously instructing defendant that the jury would decide his fate on the criminal charges in case No. 17-CF-175 while the court would simultaneously consider the probation revocation in McLean County case No. 12-CF-331, defendant said he was confused and overwhelmed at the thought of having to defend against the probation revocation, too. He presented no additional evidence and made no objections to the court considering the evidence just presented in the criminal trial. Defendant argued, "I just convinced 12 people—12 people,

just me, that I'm not guilty. So that alone I feel should show that I proved I'm [innocent] for the petition ***."

¶ 17        The court rendered its decision on the record, concluding the State proved by a preponderance of the evidence defendant violated an order of protection he had notice of on February 11, 2017. The court described the evidence of the probation violation as "overwhelming" and explained it "considered the testimony of the witnesses, the exhibits which were admitted during the hearing on the petition for revocation of probation." The court noted it "also considered the arguments from the parties, the State and [defendant] ***." Recognizing the jury acquitted defendant of this charge, the court noted "it is required to exercise its independent discretion above any decision rendered by the jury in case number 17-CF-175." The court ordered a PSI report and set the matter for sentencing.

¶ 18        During a September 2017 sentencing hearing, the State argued for a three-year sentence while defendant argued for time served. The court admitted the PSI report and observed defendant failed to comply with probation terms by committing additional offenses and refusing to complete substance abuse evaluations and treatments. Concluding "a sentence *** to the [DOC] ought and will be imposed," the court sentenced defendant to a two-year term in DOC and one year of MSR. The court noted defendant would "receive credit for 499 days against his sentence" for time served.

¶ 19        In October 2017, defendant filed a motion to reconsider his sentence, alleging the court imposed an excessive sentence considering the evidence presented. Defendant requested the court reconsider the revocation of probation and the sentence imposed. Other than noting he acted *pro se* during the revocation hearing, defendant identified no specific reason for the court to reconsider its decision revoking probation. Following a December 2017 hearing, the court

denied defendant's motion to reconsider "both as to the defendant having violated the terms of his probation and/or the sentence imposed ***."

¶ 20    This appeal followed.

¶ 21                                    II. ANALYSIS

¶ 22    Defendant now argues the trial court plainly erred by admitting and considering other-crimes evidence in the probation revocation hearing because such evidence was inadmissible and tipped the scales of justice against him in a case where the admissible evidence was closely balanced.  We disagree.

¶ 23    "[T]o preserve potential errors for [appellate] review," a defendant must make contemporaneous objections to the alleged errors at trial and then raise them in a written posttrial motion. *People v. Kiefel*, 2013 IL App (3d) 110402, ¶ 16, 986 N.E.2d 1232; *People v. Thompson*, 238 Ill. 2d 598, 611-12, 939 N.E.2d 403, 412 (2010). Otherwise, we say the defendant forfeited the unpreserved errors. *People v. Staake*, 2017 IL 121755, ¶ 30, 102 N.E.3d 217. Here, defendant concedes he forfeited the issue of whether evidence he violated the protection order on February 3 could be admitted and considered in the probation revocation hearing because he neither objected to the evidence at the hearing nor did he raise the issue in his posttrial motion.

¶ 24    But forfeiture binds only the parties, not the reviewing court. See *People v. Jackson*, 2017 IL App (1st) 151779, ¶ 20, 91 N.E.3d 472, 478. Indeed, we may review an unpreserved error for plain error in certain circumstances. *Thompson*, 238 Ill. 2d at 613 (citing *People v. Averett*, 237 Ill. 2d 1, 18, 927 N.E.2d 1191, 1201 (2010)). Defendant believes his circumstances warrant plain error analysis. "In plain-error review the burden of persuasion rests with the defendant." *Thompson*, 238 Ill. 2d at 613. We will apply the plain error doctrine when the defendant makes one of the following showings:

"(1) a clear or obvious error occurred and the evidence is so

closely balanced that the error alone threatened to tip the scales of

justice against the defendant, regardless of the seriousness of the

error, or (2) a clear or obvious error occurred and that error is so

serious that it affected the fairness of the defendant's trial and

challenged the integrity of the judicial process, regardless of the

closeness of the evidence." *Thompson*, 238 Ill. 2d at 613.

Defendant here argues only first prong plain error—the evidence was so closely balanced that admitting and considering other-crimes evidence tipped the scales of justice against him.

¶ 25        The threshold step in plain error review is whether a clear or obvious error occurred. *People v. Walker*, 232 Ill. 2d 113, 124-25, 902 N.E.2d 691, 697 (2009). Defendant alleges the court erred in admitting other-crimes evidence under section 115-7.4 of the Code because the State failed to meet all the statutory requirements. Specifically, he argues section 115-7.4 applies only to criminal proceedings, not civil proceedings like probation revocation hearings. He also contends the State failed to satisfy section 115-7.4's requirement that the February 3 incident constituted domestic violence. Defendant builds upon his argument that the trial court errantly admitted other-crimes evidence by presuming the court also errantly considered the evidence, which ultimately tipped the balance in the State's favor. He quotes the court's summary statements that it considered all the evidence submitted as support for his assumption that the court must have improperly considered the other-crimes evidence when deciding whether to revoke defendant's probation. In reality, when the trial court was rendering its findings, it merely indicated it considered the evidence. Defendant latches onto the "all the evidence language" mentioned by the court when defendant appeared to feign an inability to

understand the proceeding and the court was attempting to explain it. Additionally, the trial court clearly recognized the difference in proceedings since it took time, once again, to attempt to explain how the trial had been a criminal proceeding, but the probation revocation was civil in nature. Defendant did not object to the procedure permitting the court to consider the evidence at trial as evidence in his probation revocation proceeding.

¶ 26    Contrary to defendant's assertion, the evidence of the February 3 incident was not admitted in the probation revocation proceeding under section 115-7.4 at all. The purpose of the statute is to permit the use of other-crimes evidence in domestic violence "criminal prosecutions" where the use of such evidence might otherwise be inadmissible. *People v. Dabbs*, 239 Ill. 2d 277, 293-94, 940 N.E.2d 1088, 1099 (2010). Normally, under the common law, other-crimes evidence was admissible for any purpose *other than* to show a defendant's propensity to commit a crime. *People v. Pikes*, 2013 IL 115171, ¶ 11, 998 N.E.2d 1247. However, the February 3 incident becomes admissible in a criminal proceeding under section 115-7.4 specifically for the purpose of showing a defendant's propensity to commit a crime of domestic violence. *Dabbs*, 239 Ill. 2d at 294. The same is not true, however, for defendant's probation revocation proceedings. There, it was admissible as proof of his violation of a term of probation. *People v. Bricker*, 131 Ill. App. 2d 917, 919, 267 N.E.2d 761, 762 (1971) ("Evidence of law violation *** by a probationer offered at a hearing at which probation is sought to be revoked is entirely proper."). There was no need to prove "propensity" in the revocation proceedings; he had already been found guilty of the underlying criminal offenses for which the State was seeking to revoke his probation. At the time of trial in this case, the relevant petitions alleged the February 3 and February 11, 2017, incidents as bases for revocation of two separate terms of probation entered in two different cases. Although the State discussed proceeding on both, they ultimately decided

to pursue only the petitions related to the February 11 incidents for which defendant was going to trial. At no time did the defendant, who was represented by counsel at this point, object to proceeding simultaneously on petitions alleging both incidents and his criminal trial. The evidence admitted under section 115-7.4 for trial was simply evidence of a charged probation violation the State elected not to pursue for purposes of the revocation proceeding. Defendant's only claim of error is that it was admitted improperly under section 115-7.4 when, as to the probation violation proceedings, it would not have been admitted for the same purpose. As it turned out, the February 3 incident ultimately was not relevant to the remaining probation revocation petitions being heard simultaneously by the court, and there is no evidence the trial court considered it. It was, if anything, irrelevant to the remaining petitions. Under Illinois Rule of Evidence 402 (eff. Jan. 1, 2011), "[e]vidence which is not relevant is not admissible," and we must presume the trial court considered only admissible evidence in reaching its conclusion. Ordinarily, " 'when a trial court is the trier of fact a reviewing court presumes that the trial court considered only admissible evidence and disregarded inadmissible evidence in reaching its conclusion.' " *People v. Beck*, 2017 IL App (4th) 160654, ¶ 140, 90 N.E.3d 1083 (quoting *People v. Naylor*, 229 Ill. 2d 584, 603, 893 N.E.2d 653, 665 (2008)). In fact, the *Naylor* court, cited in *Beck* above, went on to say "[a]s a matter of fact, the presumption that a court in a bench trial considered only competent evidence in reaching its finding 'may be rebutted where the record *affirmatively* shows the contrary.' " (Emphasis added.) *Naylor*, 229 Ill. 2d at 603-04 (quoting *People v. Gilbert*, 68 Ill. 2d 252, 258-59, 369 N.E.2d 849, 852 (1977)). Here, defendant can point to nothing in the court's comments other than a reference to "all the evidence" we discussed above, which was not included in any of the trial court's oral findings. The court's explanation of its findings referenced only the allegations and evidence surrounding the February

11 incident; outlining only those petitions in its remarks. In fact, the court expressly determined the State had not met its burden by a preponderance of the evidence as to the allegations of home invasion and domestic battery but found the evidence of a violation of an order of protection to be "overwhelming."

¶ 27       For this reason, there was no error in the admission of the February 3 incident since there is no affirmative showing the trial court considered it when finding defendant in violation of his orders of probation based on the February 11 incident for which the jury found him not guilty. Absent a showing of a "clear or obvious" error, there is no further plain error analysis needed. See *People v. McLaurin*, 235 Ill. 2d 478, 489, 922 N.E.2d 344, 351-52 (2009).

¶ 28                          III. CONCLUSION

¶ 29       For the reasons stated, we affirm the trial court's judgment.

¶ 30       Affirmed.